1
2
3
4                                             **E-FILED on** ____6/20/05____
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                             SAN JOSE DIVISION
11

12  JACQUELYN S. STAFFORD-PELT,              No. C-04-00496 RMW

13            Plaintiff,                      ORDER DENYING DEFENDANTS'
                                              MOTION TO DISMISS
14       v.
                                              **[Re Docket No. 35]**
15  STATE OF CALIFORNIA, COUNTY OF SAN
    BENITO, CITY OF HOLLISTER, JOHN
16  SARSFIELD, CURTIS HILL, LARRY TODD,
    et al.
17
              Defendants.
18

19
20          Defendants County of San Benito ("San Benito County"), John Sarsfield ("Sarsfield"), and Curtis
21  Hill ("Hill") move to dismiss plaintiff Jacquelyn Stafford-Pelt's civil rights claim against them for failure to
22  state a claim upon which relief may be granted.  The court has reviewed the moving and responding papers
    and considered the arguments of counsel.  For the reasons set forth below, the court denies defendants'
23  motion.
24
                              **I.  BACKGROUND**
25
        **A.      Procedural History**
26
            Plaintiff filed a complaint against the State of California, San Benito County, City of Hollister
27  ("Hollister") and three individuals, Sarsfield, Hill, and Larry Todd ("Todd"), alleging that defendants had
28  violated both her civil rights under 42 U.S.C. § 1983 and her right to privacy under California state law.

ORDER DENYING MOTION TO DISMISS—C-04-00496 RMW
MAG

1    Plaintiff's claims result from a public disclosure by Sarsfield, Hill, and Todd of allegations of sexual

2    molestation plaintiff made when she was a minor.  Sarsfield and Hill are employees of the County of San

3    Benito, serving as that county's district attorney and sheriff respectively.  Todd is the chief of police of the

4    City of Hollister.

5         In March 2004, the State of California moved to be dismissed on Eleventh Amendment grounds.

6    Plaintiff stipulated to the State's dismissal from the action.  She further amended her complaint in late May

7    2004 to remove the state claim for invasion of privacy.  Thus, her only remaining claim is for violation of

8    plaintiff's right to privacy under 42 U.S.C. § 1983.

9         Of the remaining defendants, the City of Hollister filed an answer with this court in early April 2004,

10   while San Benito County and its employees Sarsfield and Hill filed this motion in to dismiss plaintiff's claims.

11   The City of Hollister and Todd have since been dismissed.

12        **B.       Factual Allegations**

13        Defendant John Sarsfield is the current district attorney for the County of San Benito.  After taking

14   office, Sarsfield discovered that his predecessor had failed to inform defense attorneys in the county that

15   one of the investigators in the sheriff's office who later became an investigator for the district attorney's

16   office had himself previously been investigated for sexual misconduct.  That investigator was Dennis

17   Stafford ("Stafford"), plaintiff's father.  Although Stafford was never charged with sexual misconduct,

18   Sarsfield and others determined that failure to disclose this information to defense attorneys on cases in

19   which Stafford participated may have created a "Brady error" in up to sixty cases.  *See Brady v.*

20   *Maryland*, 373 U.S. 83 (1963).

21        Defendants Sarsfield, Hill, and Todd notified the affected defense attorneys and disclosed

22   information regarding the investigation against Dennis Stafford at one or more press conferences in

23   September 2003.  In connection with the press conference, they also released police and investigation

24   reports relating to the investigation of Dennis Stafford.  Two of these reports contained information

25   regarding allegations of sexual abuse plaintiff had made when she was a minor.

26        The first released report was San Benito County Sheriff's Department Police Report Number 90-

27   0096 dated January 30, 1990 ("Police Report").  It documented a report plaintiff made on January 26,

28   1990 to a law enforcement officer alleging that her half-brother, Vincent Stafford, who is Dennis Stafford's

1    son, had sexually molested her for many years.  She was 15 years old when she made the report.  Upon

2    release of the report by the defendants, it was redacted to remove plaintiff's name, however, it identified her

3    address, age, and relationship to Vincent Stafford.

4        The second report was an investigative report on Dennis Stafford ("Investigative Report"), case

5    number 93-0414, compiled by the Hollister police department during its investigation into allegations of

6    sexual misconduct by Stafford.  The Investigative Report recounted interviews with members of Stafford's

7    family and a confidential informant, who provided the police department with information regarding

8    plaintiff's allegations of sexual abuse against Vincent.  In a section entitled "Confidential Report," it also

9    referred to plaintiff's January 1990 Police Report, alleging that failure to follow up on the sexual abuse

10   allegations against Dennis Stafford's son with a thorough investigation was procedurally improper.  This

11   second report, while redacted before release to remove her name on most pages, identified plaintiff by her

12   true name and stated that she had been the victim of molestation.

13       Plaintiff was never contacted about the release of this information by the defendants nor by anyone

14   connected with them in advance of the public disclosure.  She contends that had she been contacted, she

15   would have withheld her identity and her status as the victim of sexual crimes.  Plaintiff bases her claims

16   against all defendants upon this unconsented disclosure.

## II.  ANALYSIS

### A.    Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))

#### 1.    Legal Standard

20       A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)

21   tests the legal sufficiency of the claims in the complaint.  In a Rule 12(b)(6) motion, all material allegations in

22   the complaint must be taken as true and construed in the light most favorable to the plaintiff.  *Pillsbury,*

23   *Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994).  Dismissal is appropriate only when it

24   "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

25   him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

#### 2.    Conversion to Summary Judgment Motion (Fed. R. Civ. P. 56)

27       Ordinarily, a court may look only at the face of the complaint and documents attached to or

28   referenced in the complaint to decide a motion to dismiss.  *Van Buskirk v. Cable News Network, Inc.*,

284 F.3d 977, 980 (9th Cir. 2002).  A motion to dismiss made under Rule 12(b)(6) must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 if either party to the motion to dismiss submits materials outside the pleadings in support or opposition to the motion, and if the court relies on those materials.  Fed. R. Civ. P. 12(b)(6) ("[When] matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

The parties have submitted materials outside of the pleadings both in support of and in opposition to the instant motion to dismiss.  Defendants have included several exhibits with their motion to dismiss: (1) the redacted reports alleged in the complaint to have been released at the press conference regarding the Brady errors,[1] and (2) two newspaper articles providing history regarding the disclosure of potential misconduct by investigator Dennis Stafford and his defamation suit against the defendants in the present matter.  Plaintiff also attached the released police reports as exhibits and further attached (1) letters between defendant Sarsfield and his predecessor in the attorney general's office, (2) a letter sent to the defendants' counsel by plaintiff's attorney, and (3) a copy of a confidentiality notification used by Hollister Chief of Police Todd entitled "Confidential Information Notice to Victims of Sex and Violent Crimes."

The initial question before the court is whether the submission of these materials converts defendants' motion to dismiss to a summary judgment motion.  Most of these exhibits are irrelevant to the motion to dismiss because they do not present relevant facts regarding the disclosure of the information about which plaintiff complains.  For purposes of this motion, only the contents of the police report are relevant to the court's determination as to whether plaintiff's allegation is sufficient to survive a motion to dismiss under Rule 12(b)(6).

Two exceptions to the rule that the court's consideration of extrinsic evidence converts a motion to dismiss to a summary judgment motion apply to this case.  First, plaintiff need not attach to the complaint the documents on which it is based.  Defendants may, however, attach documents referred to in the complaint to a Rule 12(b)(6) motion to show that they do not support plaintiff's claim. *See Branch v.*

---

[1]     Defendants additionally submitted a report regarding an incident that took place on July 7, 1992, involving Kimberly Busby that was released with the two reports at issue in plaintiff's complaint.  This report is neither relevant to the complaint nor the instant motion to dismiss.

1   *Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  The court's consideration of such documents does not convert

2   a Rule 12(b)(6) motion into a motion for summary judgment.  *Id.*   Because the disclosure of police reports

3   and their contents is the basis of plaintiff's complaint and because the defendants have attached the reports

4   to their motion to dismiss to show that the reports do not support plaintiff's claim, the court may properly

5   consider the police reports as part of defendants' motion to dismiss without converting the motion to one for

6   summary judgment.

7         Second, certain materials extrinsic to the complaint may be considered if they are properly subject

8   to judicial notice.  *See Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1292 (9th Cir. 1986).

9   To be judicially noticed, a fact must not be subject to a reasonable dispute because it must be either

10  generally known within the territorial jurisdiction of the court or "capable of accurate and ready

11  determination by sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.   Thus,

12  the court may also consider the contents of the police report under the judicial notice exception.  The court

13  may take judicial notice of the contents of the police report, not for the truth of those contents, rather for

14  facts regarding when the released reports were made and what portions of those reports were redacted

15  prior to release.  Because how much and what sort of information was disclosed is at issue and the parties

16  agree that the reports attached by both parties to their respective motions were those disclosed, the court

17  takes judicial notice of these documents.

18         **B.      Plaintiff's Claim for Violation of 42 U.S.C. § 1983**

19         42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or

20  immunities secured by the Constitution and laws' of the United States."  *Wilder v. Virginia Hosp. Ass'n*,

21  496 U.S. 498, 508 (1990).  To state a claim under section 1983, plaintiff must allege two elements:  "First,

22  the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that

23  the person who has deprived him of that right acted under color of state or territorial law."  *Gomez v.*

24  *Toledo*, 446 U.S. 635, 640 (1980).  The parties do not dispute that the defendants were acting under

25  color of state law.  They do, however, contest whether the defendants have deprived plaintiff of a federal

26  right.

27         Plaintiff has alleged that defendants violated her Constitutional right to informational privacy by

28  releasing information regarding her sexual experiences and history.  Defendants acknowledge that a right to

1   informational privacy exists, however, they argue that the disclosure at issue is not sufficient to state a

2   Constitutional claim.  Furthermore, defendants contend that the Police Report and Investigative Report

3   were in the public record and that releasing information already part of the public record cannot violate

4   plaintiff's right to privacy.

5                          **1.      Fundamental Right to Privacy**

6          As the parties agree, the Supreme Court has long recognized a constitutional "zone of privacy."

7   *See, e.g.*, *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977); *Griswold v. Connecticut*, 381 U.S. 479, 483

8   (1965).  The Ninth Circuit has interpreted the Supreme Court's precedents to delineate at least two

9   constitutionally-protected privacy rights.  *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999).  "One is

10  the individual interest in avoiding disclosure of personal matters, and another is the interest in independence

11  in making certain kinds of important decisions."  *Id.* (quoting *Whalen*, 429 U.S. at 599-600); *see also Hill*

12  *v. National Collegiate Athletic Assn.*, 7 Cal.4th 1, 35 (1994).  The first of these rights, called

13  "informational privacy," "applies both when an individual chooses not to disclose highly sensitive information

14  to the government and when an individual seeks assurance that such information will not be made public."

15  *Planned Parenthood of Southern Arizona v. Lawall*, 307 F.3d 783, 789-90 (9th Cir. 2002).

16         The Constitutional "guarantee of personal privacy must be limited to those [personal rights] which

17  are fundamental or implicit in the concept of ordered liberty."  *Paul v. Davis*, 424 U.S. 693, 712, 713

18  (1976).  In *York v. Story*, 324 F.2d 450, 452 (9th Cir. 1963), the Ninth Circuit held that it was a violation

19  of the right to privacy for a police officer to take nude pictures of a sexual assault victim in suggestive poses

20  as part of an investigation and then distribute those photos within the police department.  Taking and

21  distributing the photos of the plaintiff "constituted an arbitrary intrusion upon the security of her privacy, as

22  guaranteed to her by the Due Process Clause of the Fourteenth Amendment."  *Id.* at 456.  Twenty years

23  later, the Ninth Circuit held that forced disclosure of a person's sexual history can be a violation of

24  informational privacy.  In *Thorne v. City of El Segundo*, 726 F.2d 459 (9th Cir 1983), a female police

25  officer candidate was required to disclose details about an affair with a married police officer as part of the

26  application process.  The government's action constituted encroachment on the plaintiff's constitutional right

27  to informational privacy and required the state to show that its inquiry was narrowly tailored to meet the

28  legitimate interests of the police department.  *Id.* at 469; *see also Eastwood v. Dep't of Corrections*, 846

1   F.2d 627, 631 (10th Cir. 1988) (holding that the constitutionally-protected right to privacy was violated

2   when a female correctional employee claiming to have been assaulted on the job was forced to disclose

3   irrelevant and embarrassing details about her sexual history during claim's investigation).

4   "To the extent sensitive information is in the government's custody, it has even greater power to forestall or

5   mitigate the injury caused." *Florida Star v. B.J.F.*, 491 U.S. 524, 534 (1987).  Thus, it follows that the

6   government's indiscriminate public disclosure of a person's sexual history may implicate the constitutional

7   right to informational privacy because such disclosure would subject that person to humiliation and

8   discrimination in the public eye.  *People v. Ramirez*, 55 Cal. App. 4th 47, 53 (1997) ("There can be little

9   dispute that the state's interest in protecting the privacy of sex offense victims is extremely strong and fully

10  justified. 'No crime is more horribly invasive or more brutally intimate than rape.'").  This is particularly so

11  when that sexual history involves sexual violence.  "A historic social stigma has attached to victims of sexual

12  violence. . . . Releasing the intimate details of rape will therefore not only dissect a particularly painful sexual

13  experience, but often will subject a victim to criticism and scrutiny concerning her sexuality and personal

14  choices regarding sex."  *Bloch v. Ribar*, 156 F.3d 673, 685 (6th Cir. 1998) (holding that sheriff who

15  released intimate details of plaintiff's rape at a press conference violated her constitutional right to privacy).

16          While acknowledging *York* and *Thorne*, defendants argue that these cases restrict liability for

17  Constitutional violations of the right to privacy for government actions that are particularly egregious.  The

18  disclosure in this case, they argue, is analogous to *Davis v. Bucher*, 853 F.2d 718 (9th Cir. 1988), in

19  which the Ninth Circuit found no constitutional invasion of the right to privacy where a correctional officer

20  displayed nude photographs of an inmate's wife to a limited number of inmates and made inappropriate

21  comments about her to fellow corrections officers at the prison.  *Id.* at 720.  Referring to the incidents as

22  "two isolated instances of poor judgment," the court stated, "We discern no aggravated abuse of authority

23  by [defendant] warranting the displacement of state tort law as the appropriate, and exclusive, vehicle of

24  redress."  *Id.*

25          Here, plaintiff sets forth in her complaint that defendants released a Police Report and Investigative

26  Report detailing her allegations of sexual abuse by her half-brother.  This release was allegedly made as

27  part of a press conference announcing that failure to disclose investigation into her father's misconduct may

28  have resulted in *Brady* violations in numerous County cases.  SAC ¶¶ 7[a]-[e].  The complaint alleges, and

ORDER DENYING MOTION TO DISMISS—C-04-00496 RMW
MAG                                                    7

1   a review of the released reports themselves confirms, that those reports were under-redacted such that

2   plaintiff's true name and the allegation that she was a victim of sexual abuse by her half-brother were

3   apparent. SAC ¶ 7[d]; Police Report at 1-2; Investigative Report, Chandler Confidential Report at 1-2.

4   In contrast to *Bucher*, the disclosure of plaintiff's allegations against her half-brother was not isolated; the

5   information was disseminated to the public at large.  The information disseminated was not a private photo

6   sent to a jailhouse; it was a sensitive police report given by minor regarding sexual molestation.

7   　　　　It is also well-established that the right to privacy also extends to minors,  *H. L. v. Matheson*, 450

8   U.S. 398, 435-436 (1981), and California law seeks to protect the privacy of minors.  *See, e.g.*, Welf. &

9   Inst. Code, § 676(a) (barring the public from juvenile court proceedings); Welf. & Inst. Code § 827

10  (providing for limited inspection of petitions, probation officer reports, and all other documents filed in

11  juvenile cases); Gov't Code § 6254(f)(2) (allowing a state or local agency compiling law enforcement

12  records to withhold the name of a minor victim of enumerated crimes at the request of his parent).  This is

13  particularly true when minors are the victims of sex crimes.  *See, e.g.*, Welf. & Inst. Code, § 676(b)(2)

14  (prohibiting the presence of the public during the testimony of a victim under 16 at any juvenile hearing

15  where the crime charged is a violent sex offense).  Thus, as the victim of a sexual assault when she was a

16  minor, plaintiff had a legitimate expectation that the government officials would not arbitrarily release

17  sensitive information about her allegations against her half-brother.  The defendants released reports to the

18  public that were sufficiently under-redacted to identify plaintiff as the victim of a sexual crime while she was

19  a minor.  The under-redacted Police Report listed a minor victim's address, date of birth, the name of the

20  child's alleged molester, and his relationship to her.  The released Investigative Report left plaintiff's name

21  entirely unredacted under the heading "Confidential Information," the topic of which was concern over the

22  allegations of molestation against a minor.  Alleging release of this type of information by defendants satisfies

23  plaintiff's burden to plead a violation of her informational privacy.

24  　　　　　　　**2.**　　　　**Public Records**

25  　　　　Defendants argue that the disclosure of the Police and Investigative Reports was pursuant to a valid

26  request by the media under the California Public Records Act ("CPRA"), Cal. Gov't Code § 6250 *et seq*.

27  Plaintiff has alleged only that defendants released the information in connection with the press release, thus it

28  remains an issue of fact whether the disclosure was done pursuant to the CPRA.

Even were the release of the information not in response to a request under the CPRA, defendants contend that they cannot be subject to liability for releasing the Police Report and Investigative Report because these documents were public records under California law.  The CPRA and California Penal Code section 293, they argue, authorize disclosure of the Police Report and Investigative Report to the public.

### a.    California Public Records Act

The CPRA "provides for the inspection of public records maintained by state and local agencies." *California State University, Fresno Assn., Inc. v. Superior Court*, 90 Cal. App. 4th 810, 822 (2001). Its intent is "to safeguard the accountability of government to the public."  *Coronado Police Officers Assn. v. Carroll*, 106 Cal. App. 4th 1001, 1015 (2003) (quoting *Wilson v. Superior Court*, 51 Cal. App. 4th 1136, 1141 (1996)).

Because the CPRA was intended to permit inspection of public records, the statute is generally phrased to give government agencies guidance regarding nondisclosure of information when a request for records been made.  Section 6253 provides:

> Except with respect to public records exempt from disclosure by express provisions of law, each state or local agency, upon a request for a copy of records that reasonably describes an identifiable record or records, shall make the records promptly available to any person upon payment of fees covering direct costs of duplication, or a statutory fee if applicable.

Cal. Gov't Code § 6253(b).  However, some CPRA provisions require that certain information be made public.  Section 6254(f) directs state and local law enforcement agencies to make public "all complaints or requests for assistance received by the agency," including "crimes alleged or committed or any other incident investigated . . ., the name, age, and current address of the victim, the factual circumstances surrounding the crime or incident and a general description of any injuries, property or weapons involved." With respect to victims of sexual crimes, section 6254(f)(3) provides that the address of such victims shall

1  not be disclosed.[2]  It also provides that name of the victim may be withheld at the request of the victim or

2  his or her parent or guardian.[3]

3        The CPRA also includes a catch-all provision which sets forth that a public agency must disclose a

4  record pursuant to a proper request unless "the record in question is exempt under express provisions of

5  this chapter or . . . on the facts of the particular case the public interest served by not disclosing the record

6  clearly outweighs the public interest served by disclosure of the record." Cal. Gov't Code § 6255.  "Thus,

7  the CPRA permits nondisclosure either on the basis of a specific exemption under section 6254 or, absent

8  an express exemption, when the entity satisfies the standards of the catch-all provision of section 6255."

9  *See Copley Press v. Superior Court*, 122 Cal. App. 4th 489, 499 (2004).

10        Defendants contend that the CPRA provides that they may release any information to the public

11  that is not specifically exempted from disclosure pursuant to a valid request under the CPRA.  They argue

12  that because plaintiff has failed to allege that she or her parent or guardian requested that her name be

13  withheld or deleted from the public record, section 6254 permits the disclosure of plaintiff's information.

14  First, while the CPRA is "weighted in favor of disclosure of public records [,] it does not attempt to uproot

15  constitutional concerns of individual privacy."  *Teamsters Local 856 v. Priceless, LLC*, 112 Cal. App. 4th

16  1500, 1510 (2003).  Second, defendants' attempts to utilize the CPRA as a shield against responsibility for

17  having released sensitive private information contained in reports designated by the CPRA as a public

18  record under the circumstances alleged is not supported the statute.  The statute provides guidelines for

19  disclosure and non-disclosure.  It does not necessarily immunize the government for disclosure of a public

20  record.  *See, e.g.*, *Perkey v. Department of Motor Vehicles*, 42 Cal. 3d 185, 203, n.7 (1986) (Bird, C.

21  J. concurring) (unauthorized dissemination of fingerprint records would violate constitutional right of

22  privacy); *City of Santa Rosa v. Press Democrat*, 187 Cal. App. 3d 1315, 1322 (1986) (noting the

23  possibility that a voluntary disclosure under the CPRA could expose a civil suit for damages if it results in an

24

25        [2]      "[T]he address of the victim of any crime defined by Section 220, 261, 261.5, 262, 264,
26  264.1, 273a, 273d, 273.5, 286, 288, 288a, 289, 422.6, 422.7, 422.75, or 646.9 of the Penal Code shall
   remain confidential."  Cal. Gov't Code § 6254(f)(3).

27        [3]      "The name of a victim of any crime defined by Section 220, 261, 261.5, 262, 264, 264.1,
   273a, 273d, 273.5, 286, 288, 288a, 289, 422.6, 422.7, 422.75, or 646.9 of the Penal Code may be
28  withheld at the victim's request, or at the request of the victim's parent or guardian if the victim is a minor."
   Cal. Gov't Code § 6254(f)(2).

unwarranted invasion of privacy).  Finally, even had the County Defendants released the information

pursuant to a request under the CPRA, the released reports violated Government Code section 6254(f)(3)

because they reported plaintiff's address.

**b.      Penal Code § 293**

Defendants also argue that California Penal Code section 293 designates police records as public

records.  Like Government Code section 6254(f)(2), Penal Code section 293 protects victims of sex

offenses from disclosure of certain types of information to anyone but prosecutors, parole officers, parole

hearing officers, or other legally authorized persons or agencies.  Cal. Penal Code § 293.  Subsection (a)

states:

> Any employee of a law enforcement agency who personally receives a
> report from any person, alleging that the person making the report has been
> the victim of a sex offense, shall inform that person that his or her name will
> become a matter of public record unless he or she requests that it not
> become a matter of public record, pursuant to Section 6254 of the
> Government Code.

*Id.* § 293(a).  This subsection requires a law enforcement officer who personally receives a report from a

victim alleging a sexual offense to permit that victim to withhold his or her name from the public record.  The

officer must warn the victim that his or her name will become part of the public record unless he or she

otherwise requests.  Any written report must memorialize an alleged victim's response to being so informed.

*Id.* § 293(b).  When a person has elected to exercise his or her right after being informed pursuant section

293(a) or requested their name be withheld pursuant to Government Code section 6254, law enforcement

agencies are prohibited from releasing the name of a person alleging to be the victim of a sex offense.  *Id.* §

293(d).

Defendants argue that Penal Code section 293 precludes any liability for constitutional violation

because plaintiff has not alleged that she or a parent or guardian requested her name be withheld pursuant

to section 6254(f)(2).  Plaintiff, on the other hand, claims that section 293(a) imposes a duty on law

enforcement agencies to contact alleged victims of sexual assault prior to publicly releasing identifying

information about the victim.

On its face, subsection (a) does not apply to the Investigative Report.  Only a law enforcement

officer taking the report directly from the victim need notify the victim of the option to have his or her name

withheld from the public record.  The Investigative Report records the statement of a third party confidential

informant who was not personally alleging a sexual offense against his or her own person. Nor does it apply to the Police Report. Although that report was taken directly from the victim and would require the reporting officer to inform the victim of her right to have her name withheld if taken today, Penal Code section 293 was not enacted until 1992. The date of plaintiff's interview with the San Benito Sheriff's Department was January 26, 1990. Notification as required by section 293(a) would not have been required at that time. Defendants cannot claim protection under section 293(a) both because it was not in effect at the time the report was taken and because plaintiff was never notified after the enaction of section 293(a) that she could request her name to be withheld.

### C. Qualified Immunity

Defendants, as government officials acting within the discretionary scope of their duties, argue they are entitled to qualified immunity with respect to the release of the information at issue. The entitlement to qualified immunity "is an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Thus, a ruling on the issue of qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

#### 1. Constitutional Violation

A court considering a claim of qualified immunity must first determine whether plaintiff has alleged the deprivation of an actual constitutional right, then proceed to determine if the right was "clearly established." *See Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). The threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As set forth above, plaintiff has adequately set forth a claim that defendants violated her constitutionally-protected right to informational privacy by releasing information to the public regarding (1) her sexual history and experiences and (2) allegations about sexual molestation she made as a minor.

#### 2. Clearly Established Right

If plaintiff successfully makes out a constitutional violation on the allegations, a court must next consider whether "the right was clearly established," *Saucier*, 533 U.S. at 201, or whether the state of law at the time gives officials "fair warning" that their conduct is unconstitutional. *Hope v. Pelzer*, 536 U.S.

1   730, 740 (2002). Thus, having established that Appellants violated plaintiff's constitutional rights when they

2   released the police report and investigative report, the court must evaluate whether those rights were clearly

3   established at the time of the incident and whether the "unlawfulness was apparent in light of preexisting

4   law." *Malik v. Brown*, 71 F.3d 724, 727 (9th Cir. 1995).

5          Whether the law was clearly established is a question of law for the court. *Act Up!/Portland*, 988

6   F.2d at 871. The plaintiff bears the burden of proving the existence of a "clearly established" right at the

7   time of the allegedly impermissible conduct. *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th

8   Cir. 1992). This inquiry must be undertaken in light of the specific context of the case, not as a broad

9   general proposition. *Saucier*, 533 U.S. at 202; *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 846

10  (9th Cir. 2003). The relevant, dispositive inquiry in determining whether a right is clearly established is

11  whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

12  confronted. *Saucier*, 533 U.S. at 202.

13         The law of the Ninth Circuit does not directly address the issue of privacy with respect to sexual

14  allegations by a minor in police reports. However, it is not necessary that a prior decision rule "the very

15  action in question" unlawful for a right to be clearly established. *Anderson v. Creighton*, 483 U.S. 635,

16  640 (1987); *see also Cox v. Roskelley*, 359 F.3d 1105, 1112 (9th Cir. 2004) ("[T]o find that the law was

17  clearly established we need not find a prior case with identical, or even materially similar facts.") (citing

18  *Mena v. City of Simi Valley*, 332 F.3d 1255, 1266-67 (9th Cir. 2003)).

19         California recognizes an interest in protecting the victims of sexual violence from humiliation and in

20  response has passed rape shield laws and other legislation designed to protect victims of sexual crimes from

21  public scrutiny. *See, e.g.*, Cal. Penal Code § 293 (victims alleging sexual crimes must be informed of the

22  right to remove their names from the public record); Penal Code, § 293.5 (providing that the court may

23  order the alleged victim of a sex offense be referred to by Jane or John Doe); Cal. Evid. Code § 782

24  (requiring court order prior to defendant introducing evidence of a sexual crime victim's character).[4]

25

26         [4]    California Evidence Code section 782 was recently amended by California Assembly Bill
    No. 2829 (Jun 24, 2004), to provide further privacy protection to sexual crime victims. The amendments
27  require that defendants seeking to admit evidence of victim's character in a case involving sexual crimes file
    their offer of proof under seal. Previously, motions to include such information and the associated offer of
28  proof became public court documents upon filing by defense attorneys. These amendments took effect on
    January 1, 2005.

ORDER DENYING MOTION TO DISMISS—C-04-00496 RMW
MAG                                                    13

1   California law likewise seeks to protect the privacy of minors.  *See, e.g.*, Welf. & Inst. Code, §

2   676(a) (barring the public from juvenile court proceedings); Gov't Code § 6254(f)(2) (allowing a state or

3   local agency compiling law enforcement records to withhold the name of a minor victim of enumerated

4   crimes at the request of his parent).  This is particularly true when minors are the victims of sex crimes.  *See,*

5   *e.g.*, Welf. & Inst. Code, § 676(b)(2) (prohibiting the presence of the public during the testimony of a

6   victim under 16 at any juvenile hearing where the crime charged is a violent sex offense).

7   These statutes protecting against public disclosure of information regarding sexual crimes and

8   juvenile matters is well established.  For defendants to claim otherwise by relying on the CPRA is a

9   transparent attempt to use a statute designed to foster greater access to government documents into a shield

10   against liability for any disclosure of sensitive information by the government.

11   Furthermore, the Ninth Circuit finds that some wrongs are self-evident and a "right can be clearly

12   established on the basis of 'common sense.'"  *Lee v. Gregory*, 363 F.3d 931, 935 (9th Cir. 2004).  In *Lee*,

13   for example, the court held that defendant officer was not entitled to qualified immunity because "[n]o

14   reasonable officer would believe that he is entitled to knowingly arrest the wrong man pursuant to a facially

15   valid warrant the officer knows was issued for someone else."  *Id.*  Examining the specific facts of the case

16   as alleged in the Second Amended Complaint and as set forth in the released reports, the court finds this

17   "common sense" test applies.  Defendants released two reports together: (1) the under-redacted Police

18   Report listing plaintiff's address, date of birth, the name of plaintiff's alleged molester, and his relationship to

19   her and (2) the Investigative Report making reference to the Police Report in which her name was left

20   entirely unredacted.  All of this information was released in the context of an investigation into misconduct

21   by plaintiff's father, who was not mentioned in the original Police Report made by plaintiff.  The information

22   was at best peripherally related to the potential *Brady* violations defendants were attempting to bring to

23   light.  In this case, common sense would clearly establish releasing such sensitive police would require the

24   police to balance the benefit of disclosure to the public against the damage to plaintiff's privacy interest.

### 3.   Reasonable Belief

26   If the law is determined to be clearly established, the next question is whether, under that law, a

27   reasonable official could have believed his conduct was lawful?  *Act Up!/Portland v. Bagley*, 988 F.2d

28   868, 871-72 (9th Cir. 1993).  "If the law is clearly established, an official may still prevail if he can show

1  that a reasonable [official] could have believed his conduct was lawful." *Malik v. Brown*, 71 F.3d 724,

2  730 (9th Cir. 1995).  The defendant bears the burden of establishing that his actions were reasonable, even

3  if he violated the plaintiff's constitutional rights.  *Doe v. Petaluma City School Dist.*, 54 F.3d 1447, 1450

4  (9th Cir. 1995); *Neely v. Feinstein*, 50 F.3d 1502, 1509 (9th Cir. 1995); *Maraziti*, 953 F.2d at 523.

5  Whether a reasonable official could have believed the action taken was lawful is a mixed question

6  of law and fact: "It involves an objective test of whether a reasonable official could have believed that his

7  conduct was lawful in light of what he knew and the action he took." *Sinaloa Lake Owners Ass'n v. City*

8  *of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995).  The defendant's good faith and subjective beliefs

9  about the legality of his or her conduct are irrelevant.  *Alford v. Haner*, 333 F.3d 972, 978-79 (9th Cir.

10  2003) (holding that defendants are not entitled to qualified immunity where no reasonable officer who knew

11  the law would have believed he had probable cause to arrest plaintiff, but defendants were mistaken about

12  the law).

13  Defendants who act in reliance on a state statute are generally presumed to act reasonably, even if

14  the statute is later found to be unconstitutional. *Carey v. Nevada Gaming Control Board*, 279 F.3d 873,

15  881 (9th Cir. 2002).  Defendants argue that the release of plaintiff's information made in compliance with

16  Government Code section 6254(f)(2).  As set forth above, a question remains as to whether defendants

17  had received a request for information under the CPRA.  Plaintiff has alleged that "[a]s a part of the press

18  conference(s) conducted, defendants released information contained in two confidential law enforcement

19  reports . . .".  SAC ¶ 7[d].   If, as plaintiff alleges, the defendants released the information to the press

20  without any legitimate request, the defendants were not acting pursuant to a state statute.[5]

21  Nor does the court conclude that a reasonable officer would have believed releasing such

22  unredacted information was appropriate under the circumstances.  Although defendants attribute the under-

23  redaction to clerical error and contend that, given the amount of redaction in the documents as a whole, the

24  release of the information constituted a simple mistake, the court is not so sure.  The occurrence of plaintiff's

25  unredacted name in the Investigative Report was under the heading Confidential Report and describes the

26  _____

27  [5]   Even if the defendants had released the information pursuant to a request under the California Public Records Act, the released reports violated Government Code section 6254(f)(3) which provides that "the address of the victim of any crime defined by Section 220, 261, 261.5, 262, 264, 264.1, 273a, 273d, 273.5, 286, 288, 288a, 289, 422.6, 422.7, 422.75, or 646.9 of the Penal Code shall remain confidential."

28

1   events surrounding leading up the Police Report regarding the molestation allegations.  Taking plaintiff's

2   allegations that defendants released this information as part of a press release as true, the court finds that

3   defendants' actions were unreasonable.

4       **D.      San Benito County**

5       Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality is subject

6   to liability under section 1983 when "under color of some official policy, [it] causes an employee to violate

7   another's constitutional rights." *Id.* at 692.   This is not liability founded on respondeat superior, the

8   employee must be acting pursuant to some policy. *Id.* at 691.  "A 'policy' is 'a deliberate choice to follow a

9   course of action . . . made from among various alternatives by the official or officials responsible for

10  establishing final policy with respect to the subject matter in question.'" *Fairley v. Luman*, 281 F.3d 913,

11  918 (9th Cir. 2002) (citations omitted).

12      Municipal liability under 42 U.S.C. § 1983 can occur in three different ways.  First, liability may

13  arise where a municipal employee committed the alleged constitutional violation pursuant to a formal

14  governmental policy or a practice or custom which constitutes the "standard operating procedure" of a local

15  governmental entity. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  Second, liability arises

16  where it is established that the individual who committed the constitutional violation was a government

17  official with "final policy-making authority" and that the challenged action itself thus constituted an act of

18  official governmental policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).  Finally,

19  municipal liability may be premised on proof that an official with final policy-making authority ratified a

20  subordinate's unconstitutional decision or action and the basis for it. *See Hammond v. County of*

21  *Madera*, 859 F.2d 797, 801-02 (9th Cir.1988).

22      Although plaintiff's claim does not set forth facts sufficient to allege that the release of the Police

23  Report and Investigative Report was pursuant to a long standing San Benito County policy, her allegations

24  are sufficient to demonstrate that Sarsfield and Todd, as district attorney and sheriff of San Benito County

25  may have had final policy-making authority with respect to whether to release the reports at issue.

26  Sarsfield, Todd, or an employee whose actions were ratified by one of the two could have committed an

27  act of official governmental policy.  Therefore, the court denies Defendants' motion to dismiss San Benito

28  County.

1    **E.**     **Motion for a More Definite Statement (Fed. R. Civ. P. 12(e))**

2           "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party

3    cannot reasonably be required to frame a responsive pleading, the party may move for a more definite

4    statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e).  Here, defendants  move in the

5    alternative under Rule 12(e) for a more definite statement because plaintiffs' complaint uses the language

6    "official capacity."  Accordingly, they claim that this makes it impossible for them to form an adequate

7    response to the allegations against the County.

8           The Ninth Circuit has created a presumption in favor of personal-capacity suits.  Where officials are

9    named in a complaint, the court has "presumed that officials necessarily are sued in their personal capacity .

10   . . even if the complaint does not explicitly mention the capacity in which they are sued." *Romano*, 169

11   F.3d at 1186.  As here, when officials are named personally in a complaint and the plaintiff seeks money

12   damages, the court presumes that the plaintiff asserts a personal-capacity suit.  *See Shoshone-Bannock*

13   *Tribes v. Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1284 (9th Cir. 1994).  The court rejects

14   defendants' overly technical reading of the complaint.  Read in full, the complaint clearly alleges damage

15   caused by defendants' individual conduct and seeks money damages.  The plaintiff's use of "official

16   capacity" language is best viewed as an attempt to emphasize that the defendants were acting under "color

17   of law" which is a necessary prerequisite for section 1983 liability.  *See Will v. Michigan Dep't of State*

18   *Police*, 491 U.S. 58, 70-71 (1989) (holding suits against state officials come within the scope of section

19   1983 only when the officials are sued in their "personal capacities").  Accordingly, a more definite statement

20   under Rule 12(e) is not required.

21                                    **III.  ORDER**

22           For the foregoing reasons, the court denies defendants' motion to dismiss.

23

24

25   DATED:          6/20/05                              /s/ Ronald M. Whyte
                                                        RONALD M. WHYTE
26                                                      United States District Judge

27

28

1

**Notice of this document has been electronically sent to:**

2

**Counsel for Plaintiff:**

3

Patrick Earl Marshall                                  patrickemarshall@earthlink.net

4

**Counsel for Defendants:**

5

6

John V. Picone, III                                    picone@fr.com
Susan K. Blitch                                        sblitch@hurleylaw.com

7

8

9

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's *CM/ECF* program.

10

11

12

**Dated:**          6/20/05                            /s/ MAG

13

                                                      **Chambers of Judge Whyte**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28